IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **MUSIC MAKERS HOLDINGS, LLC,** | * | |
| Plaintiff | * | |
| v. | * | Case No.: RWT 09cv1836 |
| **MARIA SARRO,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Plaintiff Music Makers Holdings, LLC ("Music Makers"), a Maryland entity, Compl. ¶ 9, brought this action for injunctive and monetary damages against Defendant Maria Sarro, a citizen of New York, *id.* ¶ 10, for her alleged tortious use of the trademark "Bach to Rock." For the reasons set forth below, the Complaint is dismissed for lack of personal jurisdiction.

## BACKGROUND

Since 2004, Defendant Maria Sarro has operated a two week summer music camp in Garden City, New York, under the name "Bach to Rock." *Id*. ¶ 40. Defendant also maintains the website bachtorock.com. *Id.* ¶ 41.

On February 6, 2007, Defendant, knowing that Music Makers planned "to open a series of rock music schools under the name 'Bach to Rock,'" sent a letter to Plaintiff warning that "we will protect the integrity of our name and reputation with any means necessary." Sarro Suppl. Decl. Ex. A. In the letter, Plaintiff further stated "[w]e advise you to choose a different name at this early juncture in the launch of your new business or to contact us for licensing/franchise agreement." *Id*.

In response, Plaintiff's parent company, Cambridge Information Group ("CIG"), sent a letter to Defendant on February 22, 2007. *Id.* CIG explained that "we *are* known by a unique mark that does not adversely affect any use you may have," that "we each conduct business in very different geographic areas," and that "such descriptors do not jeopardize our independent identities." *Id.* (emphasis in original). CIG further observed that "a cursory review of the Internet" reveals that the phrase 'Bach to Rock' "has entered music's common vernacular." *Id*. Nevertheless, CIG expressed its desire to "explore ways in which we might constructively collaborate." *Id.*

Four months later, in July 2007, Plaintiff opened its first Bach to Rock music school in Bethesda, Maryland. Compl. ¶ 17. Since then, Plaintiff has opened four additional music school locations in the Washington, D.C. metropolitan area, attracting students from Maryland, Washington, D.C., and Virginia. *Id.*

On March 25, 2008, Defendant, through counsel, sent a second letter to Plaintiff. Lutzker Decl. Ex. 1. In this letter, Defendant stated that Plaintiff's mark is likely to cause "confusion, mistake, and deception," and demanded that Plaintiff "immediately and permanently cease all use of the names and marks[,] . . . transition your company name to another name[,] . . . [and] voluntarily cancel your existing application for the mark BACH TO ROCK." *Id*. Defendant further warned that "[s]hould you fail to cooperate, our client shall proceed to take such actions as are necessary to protect its rights, including any and all appropriate legal and equitable remedies to prevent the infringement of its trademarks and other valuable property." *Id*.

On July 27, 2009, Plaintiff acquired, from the Trustee in Bankruptcy of a New Jersey company called Bach To Rock, Inc., all common law rights, title, and interest to the trademark Bach to Rock. Compl. ¶¶ 2, 24. Bach To Rock, Inc. allegedly had used the name and trademark

beginning at least as early as 1990, *id.* ¶¶ 2, 23, and advertised in New York, Massachusetts, Connecticut, New Jersey, Pennsylvania, Maryland, and Washington, D.C. *Id.* ¶ 27.

During the relevant time period, both Plaintiff and Defendant applied to the United States Patent and Trademark Office ("PTO") for federal registration of various trademarks, including:

| Date | Applicant | Serial No. | Mark | Current Status[1] |
|---|---|---|---|---|
| Dec. 1, 2006 | Plaintiff | 77/055523 | B2R BACH TO ROCK AMERICA'S MUSIC SCHOOL & design | Pending. On March 25, 2008, Defendant filed Notice of Opposition No. 91183227 with the Trademark Trial and Appeal Board, opposing Plaintiff's application for this mark. |
| Dec. 1, 2006 | Plaintiff | 77/055493 | B2R & design | Abandoned on January 11, 2010 for failure to file a statement of use. |
| Dec. 1, 2006 | Plaintiff | 77/976410 | B2R & design | Matured into Registration No. 3584462 on March 3, 2009. |
| Jan. 15, 2008 | Defendant | 77/372672 | BACH TO ROCK | Suspended pending disposition of Application Serial No. 77/055523. |
| June 12, 2009 | Plaintiff | 77/758590 | BACH TO ROCK | Suspended pending disposition of Application Serial No. 77/372672. |
| June 18, 2009 | Plaintiff | 77/763307 | BACH TO ROCK | Suspended. PTO refused registration because of (i) likelihood of confusion with registered mark No. 3368755 "BACH ROXXX" and (ii) Defendant's prior pending Application Serial No. 77/372672. |
| June 18, 2009 | Plaintiff | 77/763291 | BACH TO ROCK | Suspended pending disposition of Application Serial No. 77/372672. |

Compl. ¶¶ 30-44.

## PROCEDURAL HISTORY

On July 14, 2009, Plaintiff commenced this action alleging that Defendant's use of the mark Bach to Rock and Notice of Opposition No. 91183227 are causing irreparable harm to

---

[1] *See* United States Patent and Trademark Office Trademark Electronic Search System, http://www.uspto.gov/trademarks/index.jsp (follow "SEARCH MARKS" hyperlink; then follow "New User Form Search (Basic)" hyperlink; then enter Application Serial No.) (last visited July 14, 2010). The Court may take judicial notice of matters of public record from sources – such as the PTO – whose accuracy cannot be reasonably questioned. Fed. R. Civ. P. 201(b); *see also Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. Va. 2004); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989).

Plaintiff. *Id.* ¶ 44. The Complaint contains five counts: (i) common law trademark infringement; (ii) false designation of origin and false or misleading description of facts, in violation of the Lanham Act, 15 U.S.C. § 1125(a) (2006); (iii) unfair trade practices, in violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-303 (LexisNexis 2010); (iv) common law unfair competition; and (v) unjust enrichment. *Id.* ¶¶ 57-96.

Defendant filed a motion to dismiss the Complaint for lack of personal jurisdiction on September 23, 2009, Paper No. 9, and the Court conducted a hearing on the dispositive motion on March 22, 2010, Paper No. 33.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(2), a civil action is subject to dismissal if the forum court lacks the requisite personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant challenges a court's power to exercise personal jurisdiction over the defendant under Rule 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

When a district court addresses the question of personal jurisdiction on the basis of motion papers and legal memoranda, without an evidentiary hearing, a plaintiff need only make a prima facie showing of "a sufficient jurisdictional basis." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

## ANALYSIS

**I.    Personal Jurisdiction**

A federal court may exercise specific personal jurisdiction[2] over a non-resident defendant if (1) the requirements of the forum state's long-arm statute are satisfied and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1. *See Consulting Eng'rs*, 561 F.3d at 277. Maryland has construed its long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause. *See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 213 (4th Cir. 2002). Even though the Maryland long-arm statute reaches the outer limits of due process, a court must nevertheless consider the express provisions of the statute because it continues to limit the exercise of specific personal jurisdiction to actions arising from any act enumerated in the statute. *See Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 704 (D. Md. 2004).

**A.    Maryland Long-Arm Statute**

Plaintiff argues that the Court has specific personal jurisdiction over Defendant pursuant to section 6-103(b)(1), (3), and (4) of the Maryland long-arm statute. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1), (3), (4) (LexisNexis 2010). The Maryland long-arm statute provides, in relevant part, that:

> A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State; . . .

---

[2] Plaintiff does not – and cannot based on the evidence before the Court – argue that Defendant has maintained continuous and systematic contacts with Maryland sufficient to establish general personal jurisdiction. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (comparing general and specific personal jurisdiction).

> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State . . . .

*Id.* "The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services." *Id.* § 6-103(c)(2).

Interpreting section 6-103(b)(1), the Court of Appeals of Maryland has held that "the acts done within a State which will support in personam jurisdiction as transacting 'any business' are not necessarily limited to acts which are a part of commerce or of transactions for profit, but include acts which constitute a *purposeful activity* within the State." *Novack v. Nat'l Hot Rod Ass'n*, 231 A.2d 22, 26 (Md. 1967) (emphasis added); *see also Layton v. Aamco Transmissions, Inc.*, 717 F. Supp. 368, 370 (D. Md. 1989) (underscoring that the act must be performed within Maryland). Although the defendant does not have to be physically present in Maryland under section 6-103(b)(1), *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 671 (D. Md. 2009), Maryland courts have construed the phrase "transacting business" narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state, *see Am. Ass'n of Blood Banks v. Boston Paternity, LLC*, No. DKC 2008-2046, 2009 U.S. Dist. LEXIS 65184, at *15-16 (D. Md. July 28, 2009) (discussing Maryland state cases).

Under section 6-103(b)(3), both the tortious conduct and injury must occur in Maryland. *See Craig v. Gen. Finance Corp.*, 504 F. Supp. 1033, 1036 (D. Md. 1980). "Traditionally, 'the tortious wrong of trademark infringement takes place in *either* the place where the infringer commits acts of infringement or in the place where customers are likely to be deceived and

confused.'" *Am. Ass'n of Blood Banks*, 2009 U.S. Dist. LEXIS 65184, at *20 (emphasis in original) (quoting 6 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 32.38 (4th ed. 2008)).

In order to engage in a "persistent course of conduct" under section 6-103(b)(4), a defendant must have greater contacts than those necessary to establish jurisdiction under section 6-103(b)(1). *See id*. at *23. Unlike subsection (b)(1), "the reach of subsection (b)(4) does not extend to the limits of the due process clause." *Craig*, 504 F. Supp. at 1037.

### B. Due Process Clause of the Fourteenth Amendment

"Due process requires that personal jurisdiction over a non-resident defendant only be exercised where the defendant has certain minimum contacts with Maryland, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Young Again Prods., Inc. v. Acord*, 307 F. Supp. 2d 713, 715 (D. Md. 2004) (quotation marks omitted); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In evaluating whether specific jurisdiction over a defendant comports with due process, a court must consider (1) the extent to which the defendant has purposefully availed itself of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) whether the plaintiff's claim arises out of the defendant's activities directed at the forum state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (stating that for minimum contacts to exist, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws"). Constitutional reasonableness is measured by considering "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute;

(3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interest of the states in furthering substantive social policies." *See Consulting Eng'rs*, 561 F.3d at 279 (citing *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

## II. Defendant's Alleged Contacts with Maryland

Plaintiff describes five activities that purportedly "collectively more than satisfy the 'minimum contacts' requirements of the Due Process Clause and Maryland law." Pl.'s Opp'n 5.

### A. Cease-and-Desist Letters to Plaintiff

Plaintiff first argues that Defendant subjected herself to the Court's jurisdiction by sending two cease-and-desist letters to Defendant.[3] Pl.'s Opp'n 5-7.

Neither the Fourth Circuit nor any federal or state court in Maryland has addressed whether sending a cease-and-desist letter is sufficient to invoke personal jurisdiction under the Maryland long-arm statute or the Fourteenth Amendment.[4] *Cf. Bond v. Messerman*, 391 Md. 706, 723 (Md. 2006) (stating that "[g]enerally, telephone calls and correspondence with the plaintiff in the forum state are not sufficient contact with the forum state to satisfy due process requirements"); *id.* at 722 (concluding that even if defendant's dispensing of legal advice by

---

[3] Plaintiff acknowledges that cease-and-desist letters alone are insufficient to invoke personal jurisdiction, citing one Sixth Circuit case and three out-of-circuit, unpublished district court decisions, but argues that Defendant's letters are factors supporting purposeful availment. *See* Pl.'s Opp'n 6-7. Defendant asserts that the letters are insufficient, but cites no supporting authority. *See* Def.'s Reply 13.

[4] Three cases from the Middle District of North Carolina have held that merely sending a cease-and-desist letter is insufficient to establish personal jurisdiction. *See United Plastics Corp. v. Terra Tech., Inc.*, No. 1:06cv00629, 2007 U.S. Dist. LEXIS 10812, at *11-13 (M.D.N.C. Feb. 6, 2007) (finding that the out-of-state defendant did not avail itself of the laws of North Carolina when it sent a cease-and-desist letter and subsequent correspondence in an attempt to settle a patent dispute); *Wood Int'l, Inc. v. McRoy*, 436 F. Supp. 2d 744, 751 (M.D.N.C. 2006) (noting that defendant did not attempt to solicit business or enter into a business relationship in North Carolina and concluding that a cease-and-desist letter alone is not sufficient to support personal jurisdiction in a declaratory judgment action involving copyrighted material); *Intec USA, LLC v. Engle*, No. 1:05CV468, 2005 U.S. Dist. LEXIS 38490, at *15-16 (M.D.N.C. Sept. 8, 2005) (holding that no personal jurisdiction existed in breach of contract action because defendant's letter sent to Washington state, the location of plaintiff's law firm, did not clearly threaten litigation in North Carolina, the location of plaintiff).

letter and telephone satisfied section 6-103(b)(1) and (3), plaintiff nonetheless lacked minimum contacts with Maryland).

However, recent out-of-circuit court of appeals decisions have analyzed the issue in a variety of contexts and have uniformly held that cease-and-desist letters alone do not establish personal jurisdiction. *See, e.g.*, *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333-34 (Fed. Cir. 2008); *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 301 (3d Cir. 2008); *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 386-87 (5th Cir. 2008); *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484-87 (5th Cir. 2008).[5] In the patent arena, the Federal Circuit has explained that:

> Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998). Accordingly, in determining whether they may exercise personal jurisdiction, courts tend to consider cease-and-desist letters in conjunction with defendants' other activities in the forum state. *See, e.g., Campbell Pet Co. v. Miale*, 542 F.3d 879, 886-87 (Fed. Cir. 2008) (concluding that the court had specific personal jurisdiction over defendant in patent litigation where defendant sent cease-and-desist letters and took steps to interfere with plaintiff's business by

---

[5] *But cf. Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1208-09 (9th Cir. 2006) (en banc) (suggesting that a cease-and-desist letter alone *can* be the basis of personal jurisdiction in certain circumstances, but that defendant's letter at issue was insufficient to invoke jurisdiction because it was not abusive or tortious or used to facilitate settlement but rather to alert plaintiff of defendant's intent to file suit in France); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1089 (9th Cir. 2000) (stating that the court had personal jurisdiction when defendant sent a cease-and-desist letter to plaintiff as well as a letter to Network Solutions, Inc. ("NSI") which, under NSI procedures, would have operated to automatically prevent plaintiff from using a website had it not filed suit), *overruled in part on other grounds by Yahoo!*, 433 F.3d at 1208.

attempting to have plaintiff removed from a trade show in the forum state); *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1081-82 (10th Cir. 2008) (holding that the court had specific personal jurisdiction in action seeking declaratory judgment that plaintiff's prints do not infringe defendants' copyrights because defendants not only sent e-mails threatening suit but also contacted eBay with the intent that it take action against plaintiffs' business interests); *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547-50 (2d Cir. 2007) (recognizing that the Second Circuit had previously held that a cease-and-desist letter alone is insufficient to invoke personal jurisdiction under New York's long-arm statute, but choosing to certify to the Court of Appeals of New York the question of whether the foreign defendant transacted business in the state by sending various letters and e-mails to plaintiff); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363-67 (Fed. Cir. 2006) (clarifying that cease-and-desist letters in conjunction with a licensing agreement between defendant and a company in the forum state through which an ongoing relationship beyond royalty payments is formed, permits a court to exercise personal jurisdiction).

Consistent with the overwhelming weight of the case law, the Court concludes that cease-and-desist letters alone are not sufficient to invoke specific personal jurisdiction in an action for trademark infringement. A defendant does not "transact business" within the meaning of section 6-103(b)(1) of Maryland's long-arm statute by sending written communications to a purported infringer of its rights. Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). Moreover, the maintenance of a suit based solely on such letters would "offend traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316 (quotation marks omitted), and would therefore not comport with due process.[6]

---

[6] Basing personal jurisdiction solely on cease-and-desist letters may also have the unintended negative consequence of discouraging rights holders from resolving disputes expeditiously before seeking relief from the courts.

The primary purpose of the February 6, 2007 and March 25, 2008 letters was to inform Plaintiff of Defendant's rights and demand that Plaintiff cease and desist using the Bach to Rock mark.[7] *See* Sarro Suppl. Decl. Ex. A; Lutzker Decl. Ex. 1. Defendant did not threaten to file suit in Maryland or otherwise avail herself of Maryland's laws.[8] Accordingly, because the two communications are nothing more than cease-and-desist letters and are not sufficient to establish personal jurisdiction over Defendant, the Court must examine Defendants' other activities.[9]

### B.    E-mail Correspondence and Telephone Calls with Maryland Residents

Plaintiff argues that this Court has personal jurisdiction over Defendant because she responded to at least two e-mails from Marylanders inquiring about Bach to Rock and received telephone calls originating from Maryland. Pl.'s Opp'n at 7-8.

These e-mail and telephone communications[10] perhaps suggest that Defendant's mark is being viewed by Marylanders and that there is confusion between the marks. However, they do not establish that Defendant (i) transacted business in Maryland, *see* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1); (ii) engaged in a persistent course of conduct in Maryland, *see id.*

---

[7] Although Defendant's February 6, 2007 letter does mention the possibility of a licensing/franchise agreement, *see* Sarro Suppl. Decl. Ex. A, there is no evidence that the parties negotiated or entered into any such agreement.

[8] At the March 22, 2010 hearing, Plaintiff argued that the Court has personal jurisdiction over Defendant because she filed a Notice of Opposition with the PTO opposing one of Plaintiff's applications for a trademark. However, the PTO is located in Virginia and there is no connection between the filing of the Notice of Opposition and the State of Maryland.

[9] In determining personal jurisdiction in patent actions, the Federal Circuit has held that commercialization efforts are relevant in infringement suits but not in actions seeking a declaratory judgment. *Compare, e.g.*, *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008) (holding that only enforcement or defense efforts related to the patent rather than the patentee's own commercialization activities are to be considered for establishing specific personal jurisdiction in a declaratory judgment against the patentee), *with Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1298-1300 (Fed. Cir. 2009) (finding that commercialization-type contacts, such as attending a trade show, are highly relevant to personal jurisdiction in patent infringement suit); *see also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 n.1 (Fed. Cir. 2009). The Court assumes, without deciding, that Defendant Sarro's commercialization activities – activities that relate directly to Plaintiff's claims and alleged harm – are relevant to the issue of personal jurisdiction in an action for trademark infringement.

[10] Defendant maintained a handwritten document entitled "People that have contacted us!" *See* Pl.'s Opp'n Ex. C. The four-page document contains a list of names and telephone numbers as well as notes, such as "wanted to schedule a party in Rockville, MD" and "called for Maryland camp – found it confusing." *Id*.

§ 6-103(b)(4); or (iii) derived substantial revenue from services used or consumed in Maryland, *see id*. The e-mail communications are isolated occurrences and the list of telephone inquires does not indicate whether Defendant solicited the calls or otherwise sought business from Marylanders. Furthermore, the communications relied upon by Plaintiff in no way contradict Defendants' averment that no Maryland resident has ever attended her music camp in New York. *See* Sarro Aff. ¶ 11; Sarro Suppl. Decl. ¶ 2; *see also id*. ¶ 3 (stating that Defendant has never sent advertising material to any Maryland resident ).

Moreover, even assuming, *arguendo*, that these communications support the proposition that Defendant infringed on Plaintiff's mark within Maryland, thereby falling under the ambit of section 6-103(b)(3) of the Maryland long-arm statute, they do not, however, satisfy due process because Defendant did not purposefully avail herself of conducting activities in Maryland. In fact, the e-mail communications reveal that Defendant *rebuffed* potential Maryland customers rather than solicited business from them. Specifically, in response to the first e-mail inquiry cited by Plaintiff, Defendant wrote "Where are you located? Are you, by any chance in the DC/Maryland area? I'm wondering if you might have us confused with a different Bach to Rock?" *See* Pl.'s Opp'n Ex. A; *see also* Sarro Suppl. Decl. ¶ 11. Similarly, in response to the second e-mail inquiry, Defendant wrote "I think you're confusing us with the Bach to Rock organization in Maryland. We're actually up in New York. Good Luck!" *See* Pl.'s Opp'n Ex. B; *see also* Sarro Suppl. Decl. ¶ 12.

Accordingly, the two e-mail exchanges and the telephone communications cited by Plaintiff do not support personal jurisdiction over Defendant.

### C. Defendant's Website

Plaintiff next seeks to establish personal jurisdiction over Defendant by virtue of Defendant's bachtorock.com website. Pl.'s Opp'n at 8-12.

In the Fourth Circuit, the mere act of "placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each State in which the information is accessed." *Carefirst*, 334 F.3d at 399 (quotation marks and alterations omitted) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). Rather, defendant "must have acted with the manifest intent of targeting Marylanders." *Id.* at 400 (quotation marks omitted).

The Fourth Circuit has adopted a "sliding scale" model for website-based specific jurisdiction, a model that was first articulated by the United States District Court for the Western District of Pennsylvania in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).[11] *See Carefirst*, 334 F.3d at 399; *ALS Scan*, 293 F.3d at 713-14. Under this sliding scale, there are passive, interactive, and semi-interactive websites:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

---

[11] When discussing Defendant's website in its Opposition, Plaintiff relies on an outdated, out-of-circuit case, *see* Pl.'s Opp'n 10 (citing *Inset Sys. v. Instruction Set*, 937 F. Supp. 161 (D. Conn. 1996)), that has been criticized in Maryland, *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 808 (D. Md. 2004) (stating that *Inset Systems* had been "largely discredited").

*ALS Scan*, 293 F.3d at 713-14 (alterations omitted) (quoting *Zippo*, 952 F. Supp. at 1124). In "adopt[ing] and adapt[ing]" this model, the Fourth Circuit has held that:

> a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*Id.* at 714.

This Court has recently applied *Carefirst* and *ALS Scan* in two trademark cases. In *American Association of Blood Banks v. Boston Paternity*, the Court dismissed a trademark infringement claim for lack of personal jurisdiction, rejecting arguments nearly identical to those asserted by Plaintiff Music Makers in the instant action. 2009 U.S. Dist. LEXIS 97817, at *10-32. Because defendant's website contained a "live-chat" feature permitting users to discuss pricing with a representative, the *Blood Banks* Court concluded that the website was semi-interactive. *Id.* at *26. However, defendant never entered into a transaction with any Maryland resident and it did not direct its website into Maryland "with the manifest intent of engaging in any transaction with the state." *Id.* The Court therefore concluded that the website and the application and payments that defendant had mailed into Maryland on an annual basis together did not satisfy section 6-103(b)(1) or (4) of the Maryland long-arm statute. *See id.* at *27-28.

Similarly, in *Eagle Coffee Co., Inc. v. Eagle Coffee International, Inc.*, the Court also dismissed a trademark infringement case for lack of personal jurisdiction. No. L-09-2585, 2010 U.S. Dist. LEXIS 9642, at *6-14 (D. Md. Feb. 4, 2010). In *Eagle Coffee*, the only contacts defendant had with Maryland were (i) a website that advertised its products and (ii) sales occurring over the past two years to seven Marylanders (representing less than 0.1% of the company's business). *See id.* at *8-9. The *Eagle Coffee* Court found that the website did not

14

suggest that defendant intended to target residents of Maryland more than residents of any other state. *See id.* at *11. The Court also concluded that defendant's interactions with the seven Maryland residents – which consisted of encouraging the customers to "please come again," placing a confirmatory phone call, and using a nationwide delivery service – were *de minimus*, isolated occurrences. *See id.* at *12-13.

Here, Defendant Sarro maintains a website at bachtorock.com which provides information regarding her camp, a toll-free number, and a registration form which visitors can print and mail to Defendant in New York. *See* Sarro Suppl. Decl. ¶¶ 6-8; *see also* Sarro Aff. ¶ 12. The website also had, for some period of time, a Google search box.[12]

Defendant's website is passive, or at most semi-interactive, under the Fourth Circuit's sliding scale. A visitor to bachtorock.com cannot, for example, (i) submit an application electronically; (ii) make a payment by credit card; (iii) participate in a live chat; or (iv) send an e-mail using interactive forms. Furthermore, even assuming, *arguendo*, that the Google search box can be considered,[13] it neither encourages Marylanders to visit Defendant's website nor demonstrates any intent to target Maryland residents. Moreover, bachtorock.com is local in

---

[12] The parties appear to disagree as to the purpose and function of the search box. Plaintiff alleges that Defendant chose not to limit the search to her website and instead allowed it to return results from the entire internet. Plaintiff further speculates that Defendant may be compensated by the Google AdSense program. Pl.'s Opp'n 11-12. In response, Defendant avers that the search results were limited to bachtorock.com. *Sarro Suppl. Decl.* ¶ 18; Def.'s Reply at 11 n.8 (stating that Plaintiff is confusing Google's keyword advertising, which does appear on Defendant's website when a search is run, with restrictions placed on search results). Defendant further avers that the search box was added through Google Custom Search Element, not Google AdSense, and that neither she nor the webmaster (i) entered into a contract with Google; (ii) completed any forms; or (iii) received money from Google. *See* Sarro Suppl. Decl. ¶¶ 13-21; *see also id.* ¶ 15 (explaining that the webmaster simply copied and pasted a few lines of free computer code).

[13] Defendant argues that the Court cannot consider the Google search box because it was added to Defendant's website in October or November 2009, more than three months after Plaintiff commenced this action. Def.'s Reply 9-10; *see also* Sarro Suppl. Decl. ¶ 13; *id.* ¶ 23 (stating that the search box was removed on February 11, 2010). If it was recently added, the search box is irrelevant because "[a] defendant's contacts with a forum state, for specific jurisdiction purposes, are measured as of the time the claim arose." *Marriott PLP Corp. v. Tuschman*, 904 F. Supp. 461, 467 (D. Md. 1995). However, the Court need not resolve this factual dispute because even if the search box is relevant to the issue of personal jurisdiction, it in no way demonstrates that Defendant directed electronic activity into Maryland, with the intent of engaging in business in the State. *See ALS Scan*, 293 F.3d at 714.

nature. It clearly indicates that the summer music camp is located in New York and does not identify Marylanders (or the residents of any other state) as potential customers. In sum, the level of interactivity of Defendant's website is low, the exchange of information is unidirectional, and the website does not suggest that Defendant intended to aim electronic activity into Maryland.[14] Accordingly, Defendant's website does not support personal jurisdiction.

### D. Advertising on Camp Marketing Websites

In addition to maintaining bachtorock.com, Defendant promoted her business through third-party websites including campchannel.com, thesummerlady.com, campdepot.com, mysummercamp.com, daycamps.net, and camppage.com. *See* Def.'s Resp. to Interrog. No. 4(c). Plaintiff argues that Defendant purposely availed herself of the Maryland marketplace by participating in these third-party websites and that these minimum contacts support the Court's exercise of personal jurisdiction. *See* Pl.'s Opp'n 12-15.

However, as with bachtorock.com, these third-party websites do not indicate that Defendant "direct[ed] electronic activity into the State . . . with the manifested intent of engaging in business or other interactions within the state." *ALS Scan*, 293 F.3d at 714. The fact that some of the third-party websites group camps geographically, combining New York and Maryland in the same region, does not establish that Defendant specifically targeted Marylanders to attend her out-of-state camp. The generic advertising found on these third-party websites is insufficient to invoke personal jurisdiction in Maryland.

---

[14] Rather, as discussed in Part II.B, *supra*, e-mails sent by Defendant suggest that she turned away Maryland customers. *See* Pl.'s Opp'n Exs. A, B; *see also* Sarro Suppl. Decl. ¶¶ 11, 12.

### E. The Effects Test: Intentional Infringement, Willful Diversion of Maryland Consumers, and Intent to Harm Plaintiff Within the Forum State

Finally, Plaintiff argues that the Court has personal jurisdiction over Defendant because "[t]he wilfulness with which Defendant has infringed Plaintiff's Maryland-based trademark rights, coupled with her apparent intention that these infringements be felt within the forum (by Plaintiff and also by the Maryland-based consumers who were diverted toward Plaintiff's website), more than meet the 'effects' test . . . ." Pl.'s Opp'n 17.

The effects test, established in *Calder v. Jones*, 465 U.S. 783, 789 (1984), "does not supplant the minimum contacts analysis, but rather informs it." *Consulting Eng'rs*, 561 F.3d at 280. The test requires that a plaintiff establish that:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*Carefirst*, 334 F.3d at 398 n.7; *see also Consulting Eng'rs*, 561 F.3d at 280 (emphasizing that "although the place the plaintiff feels the alleged injury is plainly relevant to the jurisdictional inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld" (alterations omitted)).

The first two prongs of the effects test have been satisfied. Resolving in Plaintiff's favor, as it must, *see Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993), the factual dispute as to whether Defendant or Bach to Rock, Inc. first used the mark,[15] the Court assumes that

---

[15] Defendant asserts that she began using the Bach to Rock mark in January 2004, Sarro Aff. ¶¶ 5, 6; *see also* Compl. ¶ 3, three years before Plaintiff opened its music school in July 2007, Compl. ¶ 17, and notes that Plaintiff has provided no documentary evidence establishing that Bach to Rock, Inc. used the mark at least as early as 1990, Def.'s Reply at 12 (referring to East Coast Pianos instead of Bach to Rock, Inc.).

Defendant has committed an intentional tort of trademark infringement. The Court further assumes that Plaintiff has felt the brunt of the harm in Maryland, where it conducts its business.

However, Plaintiff has failed to establish the third element of the effects test. As discussed in Part II.A-D, *supra*, Defendant has not "expressly aimed" her allegedly tortious conduct at the forum,[16] *Carefirst*, 334 F.3d at 398 n.7; she did not target Maryland residents, rejected inquires from Marylanders, and has never enrolled anyone from the State in her music camp.[17]

Accordingly, the Court does not have personal jurisdiction over Defendant under the effects test.

## CONCLUSION

Defendant's activities, considered collectively, are insufficient to establish personal jurisdiction under either the Maryland long-arm statute or the United States Constitution. Plaintiff has failed to make a prima facie showing of "a sufficient jurisdictional basis." *Consulting Eng'rs*, 561 F.3d at 276. Defendant simply did not avail herself of conducting activity in Maryland. Accordingly, the Court will, by separate Order, grant Defendant's Rule

---

[16] Plaintiff's reliance on *Cole-Tuve, Inc. v. American Machine Tools Corp.*, 342 F. Supp. 2d 362 (D. Md. 2004) is misplaced. *See* Pl.'s Opp'n 16-17. Unlike in *Cole-Tuve* where the defendant registered a domain name similar to plaintiff's name so as to redirect the plaintiff's internet traffic, 342 F. Supp. 2d at 368-69, Defendant Sarro has not redirected Maryland customers from Plaintiff's business. Rather, she on at least one occasion indicated to a potential customer that there was another organization with the same name located in Maryland, wishing that customer "[g]ood luck!" *See* Pl.'s Opp'n Ex. B; *see also* Sarro Suppl. Decl. ¶ 12.

[17] Before the Fourth Circuit adopted and adapted the *Zippo* model, this Court in *American Information Corp. v. American Infometrics, Inc.*, held that "the use of someone else's registered service mark as a Web site address, without any evidence of entry into the forum state, deliberate targeting of the plaintiff, or even a concentration of harmful effects in the forum state, does not constitute 'effects' sufficient to create jurisdiction in the forum state." 139 F. Supp. 2d 696, 702 (2001).

12(b)(2) motion and dismiss the complaint for lack of personal jurisdiction.


<u>July 14, 2010</u>                          <u>         /s/         </u>
Date                                     Roger W. Titus
                                         United States District Judge